UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES M. WORK<br><br>　　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>RAGAN AND MASSEY, INC.,<br>MONSANTO COMPANY,<br>JOINT GLYPHOSATE TASK FORCE, LLC<br><br>　　　　　　　　　　　Defendants. | CIVIL ACTION NO. _____<br><br>SECTION " "<br>JUDGE<br><br>MAGISTRATE ( )<br>MAGISTRATE JUDGE |

## NOTICE OF REMOVAL OF DEFENDANT
## JOINT GLYPHOSATE TASK FORCE, LLC

Defendant Joint Glyphosate Task Force, LLC ("JGTF") hereby notices removal of this civil action to the United States District Court for the Eastern District of Louisiana from the Twenty-First Judicial District Court in and for the Parish of Tangipahoa.  The JGTF notices removal of this case pursuant to 28 U.S.C. § 1441, on the grounds that the allegations against the JGTF challenge the provision of the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 *et seq.*, which provides for pesticide manufacturers to work together for the purpose of generating data required by the U.S. Environmental Protection Agency ("EPA"), thereby raising substantial federal questions.  The JGTF also notices this removal pursuant to 28 U.S.C. § 1442, on the grounds that this action brings into question the discretionary decision of a federal officer.

**I.　PURSUANT TO 28 U.S.C. § 1446, REMOVAL IS TIMELY AND APPROPRIATE**

　　　　1.　On or about April 22, 2016, Plaintiff filed his Complaint naming Ragan and Massey, Inc. ("Ragan & Massey"), Monsanto Company ("Monsanto") and the JGTF as

2698176-1

defendants. The action is captioned *James M. Work v. Ragan and Massey, Inc., et al.*, Case No.: 2016-0001178, 21st Judicial District Court, Parish of Tangipahoa, Louisiana. A true and correct copy of the Complaint and all "process, pleadings, and orders" that have been served on the JGTF in the state court action are attached as Exhibit A and are being filed with this Notice as required by 28 U.S.C. § 1446(a).

2. The JGTF received service of Plaintiff's Complaint in this action on May 2, 2016 and is filing this Notice of Removal within thirty (30) days of service of the Complaint. Removal is therefore timely under 28 U.S.C. §1446(b).

3. The JGTF need not obtain the consent from other defendants to remove on federal officer grounds. *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006). However, for federal question jurisdiction, the JGTF has obtained consent from Ragan & Massey and Monsanto, and such written consents are attached as Exhibit B. Therefore, removal of this case is timely and appropriate.

## II.   INTRODUCTION AND BACKGROUND

4. This action is one of many suits filed within the past year against Monsanto in courts across the country claiming injuries from exposure to glyphosate, a pesticide that Monsanto has marketed and sold for decades. Like the other suits, Plaintiff asserts claims such as design defect, failure to warn, negligence, and breach of express and implied warranties against Monsanto. But unlike most of the preceding cases, Plaintiff here adds conspiracy allegations directed at the JGTF, Ragan & Massey, and Monsanto.

5. The JGTF has 26 members; 25 of these 26 members are companies that possess an EPA license to produce and sell glyphosate (a "registration") in the United States. Declaration of Katie Miller ("Miller Decl."), ¶ 5 (Exhibit C). The 26th JGTF member possesses

a Canadian glyphosate registration but not an EPA registration.  Id.  Glyphosate is a pesticide that Monsanto first registered over forty years ago.  Id.  In January, 2010, EPA directed each of the 25 U.S. glyphosate registrants, including Defendant Monsanto, to perform and submit eleven studies intended to screen glyphosate for its potential to cause effects to the endocrine systems of laboratory animals.  Id., ¶ 6.  Then, in September 2010, EPA directed these same companies to submit nine additional studies (five studies evaluating the effects of glyphosate on various aquatic species one study evaluating the effects of glyphosate on an avian species, two studies evaluating glyphosate's neurotoxic effects, and one study evaluating its immunotoxic effects). Id.

6. Where, as here, EPA requires multiple registrants of the same pesticide to perform new studies to maintain their existing registrations, the registrants almost always form a task force to generate one set of data (as opposed to each company generating a duplicate set of data). Id. ¶ 7.  Formation of such task forces is expressly authorized by the language of FIFRA as a means of avoiding such duplicative data generation.  Id.

7. Plaintiff has mischaracterized the JGTF and its members as a group of co-conspirators, equating their action of "generating data" to "misrepresent[ation]" and "concealment[]" of "the dangers inherent in exposure to glyphosate."  Compl., ¶¶ 48-49, 165, 167.  In reality, the JGTF, like other FIFRA task forces, performed studies specified by EPA in accordance with procedures reviewed and approved by EPA.  Miller Decl., ¶ 9.  Plaintiff's attempt to recast this FIFRA task force as a "conspiracy" is a transparent attempt to use JGTF and its Louisiana-based member to avoid having Plaintiff's claims resolved in a federal court. The claims against the JGTF, however, frustrate the Congressional intent of language in FIFRA authorizing task force formation to respond to EPA data requests.  This case raises a federal

3

question and should be adjudicated in a federal court. The claims are also directed to actions the JGTF took at the specific direction of the EPA and are pre-empted by federal law. Thus, this case is also removable on federal officer grounds.

### III. PURSUANT TO 28 U.S.C. § 1441, REMOVAL IS PROPER ON THE GROUNDS OF A FEDERAL QUESTION

8. Removal of this case is proper pursuant to 28 U.S.C. § 1441, as this case arises under the Constitution, laws, and treaties of the United States and involves uniquely federal interests.

9. Although Plaintiff asserts only state law causes of action, his Complaint reveals that adjudication of the elements of those causes of action will require this Court to resolve substantial disputed questions of federal law. The U.S. Supreme Court has recognized that even in cases where the causes of action asserted by a plaintiff are couched exclusively in state law terms, federal question jurisdiction exists if resolution of those state law causes of action depends on resolution of substantial predicate questions of federal law. *See Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005) ("a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues"); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1 (1983) ("We have often held that a case 'arose under' federal law where the vindication of a right under state law necessarily turned on some construction of federal law" (citations omitted)).

10. In this case, the resolution of Plaintiff's state law claims depends on the resolution of a substantial predicate question of federal law. Plaintiff's claim against the JGTF is based on an allegation that the JGTF engaged in a civil conspiracy to defraud the public as to the safety of the pesticide glyphosate by "'generating data' to deceive the government and the public about

4

the safety of glyphosate" and to "prevent governments from revoking the Defendants' license to sell glyphosate." Compl. ¶¶ 49, 167.

11. The JGTF, however, was formed after EPA directed every glyphosate registrant to submit a set of eleven studies designed to determine if glyphosate has an effect on the endocrine system of laboratory animals. Miller Decl., ¶¶ 6-9. In response to EPA's request, an initial group of 18 companies with technical glyphosate registrations formed the JGTF to jointly develop one set of data, instead of 18 separate sets; additional companies joined the task force later, bringing the membership up to 26 companies. Id., ¶ 8. As discussed in the next paragraph, the creation of such pesticide data task forces is expressly sanctioned by FIFRA. The only data generated by the JGTF is the data that EPA required the JGTF members to submit under EPA's data call-in. Id., ¶¶ 9-10.

12. Plaintiff's conspiracy allegations contravene the statutory scheme under FIFRA. Specifically, where EPA requires existing registrants of a pesticide to submit additional data to support continued registration of the pesticide -- as happened in the present case -- FIFRA expressly provides for the formation of task forces of registrants to jointly develop the data required by EPA:

> (i)  If the Administrator determines that additional data are required to maintain in effect an existing registration of a pesticide, the Administrator shall notify all existing registrants of the pesticide to which the determination relates . . . .
>
> (ii)  Two or more registrants may agree to develop jointly, or to share in the cost of developing, such data if they agree and advise the Administrator of their intent within ninety days after notification. Any registrant who agrees to share in the cost of producing the data shall be entitled to examine and rely upon such data in support of maintenance of such registration.

FIFRA § 3(c)(2)(B)(i) & (ii); 7 U.S.C. § 136a(c)(2)(B)(i) & (ii).

5

2698176-1

13. Congress included this provision to prevent the duplication of data generation efforts and save EPA the time reviewing multiple submissions. *See* S. Rep. No. 95-334, at 2 (permitting "arrangements by which the necessary data can be submitted jointly by the registrants to avoid the waste involved in duplicative testing"), at 7 (noting that requiring "duplicative data development" will result in "unnecessary costs to producers and consumers"), and at 8 ("The Subcommittee agreed to the need to reduce duplication in the development of 'defensive data' needed for the maintenance of existing registrations, and accepted the provisions in S. 1678 authorizing joint production of the necessary data where there is more than one existing registrant"). *Cf* S. Rep. 95-335 (July 6, 1977) at 48 ("The Agency believes it is in the best public interest to devote its currently scarce resources to assessing the effects of the pesticide chemical from a generic standpoint rather than laboriously processing thousands of individual product actions").

14. Plaintiff's allegations, if permitted to proceed, threaten the viability of the statutory scheme under FIFRA § 3(c)(2)(B). Plaintiff, in essence, alleges that, by deciding to jointly develop glyphosate data that EPA required all glyphosate registrants to submit, the glyphosate registrants impermissibly partook in a conspiracy. This allegation runs counter to the Congressional intent behind Section 3(c)(2)(B) of FIFRA, thereby raising substantial federal questions. Indeed, it will be impossible to resolve Plaintiff's claims without first resolving these intricate federal issues, including the permissible role under FIFRA of task forces of pesticide registrants, such as the JGTF.

15. Because Plaintiff's case rests upon a particular interpretation of the role of the JGTF, an entity created under federal law, a federal court is the proper forum for the case. *See D.C. v. Grp. Hospitalization & Med. Servs., Inc.*, 576 F. Supp. 2d 51, 54-56 (D.D.C. 2008)

(holding that the case presents a federal question because a Congressional act creating an incorporated entity "constitutes federal law" and "[a]s such the charter is a 'legislative act[] that must be construed and interpreted just like any other federal statute," and such interpretation is appropriate for a federal court); *Supreme Lodge K. of P. v. Mims*, 241 U.S. 574, 578, 36 S.Ct. 702, 60 L.Ed. 1179 (1916) (denying motion for jurisdictional dismissal because "the case necessarily will turn on the construction of the present charter, an act of Congress"); *Kueber v. City of San Antonio,* No. SA:15-CV-382-DAE, 2015 WL 4887558, at *3 (W.D. Tex. Aug. 17, 2015) (holding that a city charter that mirrors federal requirements presents a federal issue); *Nevada ex rel. Hager v. Countrywide Home Loans Servicing, LP*, No. 3:10-CV-419-RCJ-PAL, 2011 WL 484298, at *3 (D. Nev. Feb. 4, 2011) (finding federal subject-matter jurisdiction because "a court would have to interpret federal law" by interpreting Fannie Mae's federal charter).[1]

16. The federal regulatory scheme under FIFRA also was designed to protect individuals from the misconduct Plaintiff alleges in his Complaint, i.e., "misrepresent[ing] and conceal[ing] facts related to the safety of glyphosate." *See* Compl., ¶ 169. FIFRA prohibits the knowing falsification of "any information relating to the testing of any pesticide," 7 U.S.C. § 136j(a)(2)(Q), and also makes it illegal to fail to submit new information regarding the adverse effects of a pesticide. 7 U.S.C. § 136j(a)(2)(B)(ii), 7 U.S.C. § 136d(a)(2). A pesticide registrant

---

[1] In *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005) *reh'g denied*, 545 U.S. 1158 (2005), the Supreme Court corrected interpretations of *Merrell Dow Pharm. v. Thompson*, 478 U.S. 804 (1986), that required a federal cause of action as a condition for finding federal question jurisdiction. *Grable* held that there is not one "'single, precise, all-embracing' test for jurisdiction over federal issues embedded in state-law claims . . . [and that determining whether federal question jurisdiction exists requires] the contextual enquiry." *Grable*, 545 U.S. 314, 318.

who fails to abide by these laws or the regulations implementing them is subject to civil or criminal penalties, 7 U.S.C. § 136*l*, and their registrations are subject to cancelation at the discretion of the EPA. 62 Fed. Reg. 49370, 49372 (Sept. 19, 1997). Because the JGTF's actions at issue were and are subject to comprehensive and specific federal requirements, it is evident that federal, not state, law is at the heart of this action.

17.  Removal to this Court is thus proper in that federal question jurisdiction exists under 28 U.S.C. § 1331 and 1441.

### IV. PURSUANT TO 28 U.S.C. § 1442, REMOVAL IS PROPER ON THE GROUNDS THAT THE ACTION IS AGAINST A FEDERAL OFFICER

18.  This case is also properly removed under 28 U.S.C. § 1442 because it involves an action against a person acting under an officer of the United States. 28 U.S.C. § 1442(a)(1); *see Mesa v. California*, 489 U.S. 121, 129 (1989).

19.  Federal officer removal jurisdiction is proper where a defendant: (1) demonstrates that it is a person within the meaning of the statute; (2) establishes that it acted under the direction of a federal agency or officer; (3) raises a colorable federal defense; and (4) demonstrates a causal nexus between the federal direction and the conduct in question. *Feidt v. Owens Corning Fiberglas Corp.*, 153 F.3d 124, 127 (3d Cir. 1998) (citing *Mesa*, 489 U.S. at 129). Removal is proper under 28 U.S.C. § 1442 because the JGTF satisfies each of these requirements.

20.  The JGTF satisfies the first prong of the test because the JGTF, a limited liability corporation, is a person within the meaning of Section 1442(a)(1). *See Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 396-97 (5th Cir. 1998).

21.  With regard to the second prong, the JGTF acted under the direct and detailed

authority of a federal officer in its generation and submission of glyphosate data. The Director of EPA's Office of Pesticide Programs specified which studies were to be performed and how those studies were to be performed. Miller Decl. ¶ 9.

22. Specifically, EPA instructed each of the JGTF members to conduct eleven specific endocrine disruptor studies, five specific aquatic toxicity studies, a specific avian oral toxicity study, a neurotoxicity screening battery, and an immunotoxicity study. Miller Decl. ¶ 9. The JGTF had no discretion to alter a study from the study design required by EPA. Id., ¶ 10. EPA reviewed and approved the protocols for conducting the studies, or provided detailed guidelines for performing them. *See* 40 C.F.R. § 160.120(a) ("Each study shall have an approved written protocol that clearly indicates the objectives and all methods for the conduct of the study"); Miller Decl. ¶ 10; *see also* Compl. ¶ 34 ("[t]he EPA has protocols governing the conduct of tests required for registration and the laboratory practices that must be followed in conducting these tests.") JGTF had to follow these EPA-approved protocols and EPA-generated guidelines. 40 C.F.R. § 160.130(a) ("The study shall be conducted in accordance with the protocol"); Miller Decl. ¶ 10. As Plaintiffs state, "[t]he government is not . . . able, however, to perform the product tests that are required of the manufacturer." *See* Compl. ¶ 34. Task forces such as the JGTF perform such studies at the behest of EPA.

23. The JGTF thus was acting within the scope of federally mandated requirements and under the direct and detailed authority of EPA. *See Gurda Farms, Inc. v. Monroe County Legal Assistance Corp.*, 358 F. Supp. 841, 844 (S.D.N.Y. 1973) (federal officer removal appropriate when a defendant is governed by "exceedingly complex regulations, guidelines, and evaluation schemes"); *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1428 (11th Cir. 1996).

24. As to the third prong, assertion of a colorable federal defense, the JGTF has a

colorable federal defense of federal preemption. *See Feidt*, 153 F.3d at 127; *Magnin*, 91 F.3d at 1427. Such federal defenses "need only be plausible; its ultimate validity is not to be determined at the time of removal." *Magnin*, 91 F.3d at 1427.

25. The JGTF has a strong federal defense of preemption of Plaintiff's tort law claims. Plaintiff asserts that the JGTF is part of a conspiracy to "fraudulently misrepresent" and "conceal" data, but FIFRA vests with the EPA authority to prosecute registrants for such actions. Specifically, FIFRA prohibits the "knowing falsification of any information relating to the testing of any pesticide, " 7 U.S.C. § 136j(a)(2)(Q), and makes it illegal to fail to submit new information regarding adverse effects of a pesticide. *Id*., § 136j(a)(2)(B)(ii) and § 136d(a)(2). Thus, Plaintiff's claims relating to such alleged actions are preempted. *See Giglio v. Monsanto Co.*, No. 15cv2279 BTM(NLS), 2016 U.S. Dist. LEXIS 57504, at *7-9 (S.D. Cal. Apr. 29, 2016) (finding that the plaintiff's claims that defendant "concealed information from and/or misrepresented information to the EPA concerning the severity of the risks and dangers of Roundup [i.e., glyphosate]" were preempted because they were "directly based on the propriety of disclosures made by Defendant to the EPA," over which EPA has regulations and the ability to enforce those regulations).

26. Plaintiff's claims against the JGTF are also preempted because an interpretation of state law that allows such claims would conflict with Congress's intent to encourage pesticide manufacturers to work together in a task force. Congress expressly sanctioned the creation of such task forces under FIFRA § 3(c)(2)(B)(ii), with the intent that pesticide companies would work together to jointly develop a single set of data, rather than independently generate duplicate data sets. Eliminating such duplication is beneficial for the registrants, because it lowers their costs, and for EPA, because it conserves the resources required for review of submitted studies.

*See* S. Rep. No. 95-334, at 2 (permitting "arrangements by which the necessary data can be submitted jointly by the registrants to avoid the waste involved in duplicative testing").

27. Finally, as to the fourth prong, the JGTF demonstrates a "causal nexus" between the federal direction and the conduct in question.  As noted above, the JGTF generates studies and collects data at the direction of the EPA.  The JGTF has no discretion to alter a study from the study design mandated by the EPA.  Miller Decl. ¶ 10.  Plaintiff's claims directly challenge this very conduct.  Plaintiffs allege, for example, that the JGTF engaged in a conspiracy by "'generating data'" to "prevent governments from revoking the Defendants' license to sell glyphosate."  *See* Compl. ¶¶ 49, 167.  As such, the requisite "causal nexus" exists.

28. Because JGTF satisfies the prongs of the federal officer removal test, this case is properly removed on federal officer removal grounds.

WHEREFORE, Defendant JGTF hereby removes the action to the United States District Court for the Eastern District of Louisiana and seeks that the Twenty-First Judicial District Court in and for the Parish of Tangipahoa proceed no further with respect to this action.

May 31, 2016                                    Respectfully Submitted,

**CHAFFE McCALL, L.L.P.**

*By: /s/Peter J. Rotolo, III*
John F. Olinde (#1515)
Peter J. Rotolo, III (#21848)
Amy L. McIntire (#35241)
**CHAFFE McCALL, L.L.P.**
2300 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone:  (504) 585-7000
Fax: (504) 544-6095
olinde@chaffe.com
rotolo@chaffe.com

*-and-*

**DENTONS US LLP**

Peter L. Gray, Esq. (pro hac vice to be filed)
John W. Lomas, Esq. (pro hac vice to be filed)
1900 K Street NW
Washington, DC 20006
(202) 496-7500
(202) 496-7756 (facsimile)

**Attorneys for Defendant**
**Joint Glyphosate Task Force, LLC**

### CERTIFICATE OF SERVICE

I hereby certify that on this 31st day of May, 2016, a copy of the foregoing was hand delivered, telefaxed, and/or mailed by United States Postal Service to all counsel of record.

/s/      *Peter J. Rotolo*

2698176-1